### Parrott W. McNeese vs. The Republic of Texas — Appeal from Washington County.

A person who was a citizen of Texas at the date of the declaration of independence; who was a single man, and contributed to the support and defense of the country previous to the 14th of December, 1837; who had received a certificate for one-third of a league of land, and subsequently married in Texas in 1839, is not, under these circumstances, entitled by virtue of the 3d section of the act of 1839 "extending donations of land to late emigrants," to an augmentation of two-thirds of a league and labor of land.

This was a suit brought by the appellant to establish his right, under the 3d section of the act extending donations of land to late emigrants, approved 4th January, 1839, to an augmentation of two-thirds of a league and one labor of land.

The facts proven in the court below by the plaintiff, and upon which he relied to substantiate his claim, were as follows: That he was a single man and a citizen of the republic of Texas at the date of the declaration of independence; that as such he had already received a certificate for one-third of a league of land; that previous to the 14th day of December, 1837, he engaged in the military service of the republic, performed a tour therein, and received an honorable discharge; that in June, 1839, he married in Texas, and shortly afterwards obtained from the board of land commissioners of Washington county a certificate for the augmentation above expressed, which said certificate the board of traveling commissioners subsequently refused to [107] recommend as genuine and legal. The jury, under the instructions of the court, found a verdict for the defendant, whereupon this appeal was taken.

*Taylor*, for appellant.

*Harris*, Attorney General, for appellee.

No briefs furnished the reporters.

Mr. Chief Justice HEMPHILL delivered the opinion of the court.

The appellant was a citizen of Texas at the date of the declaration of independence; was a single man, and contributed to the support and defense of the country previous to the 14th December, 1837. He married in Texas in 1839, and the question is, whether, under these circumstances, he is entitled (by virtue of the 3d section of the act extending donations of land to late emigrants, approved 4th January, 1837) to an augmentation of two-thirds of a league and labor of land.

That section is expressed in the following terms, viz.: "All officers and soldiers who engaged in the service of Texas previous to the first of March, one thousand eight hundred and thirty-seven, whose families are now here, or who may arrive here by the first day of January, one thousand eight hundred and forty, shall be entitled to the same quantity of land that they would have been if their families had emigrated to the country with them."

The counsel for the appellant has drawn a vivid picture of

the odiousness of discriminating, in awarding the land bounty, between those who were citizens of Texas at the declaration of independence, and subsequent emigrants to the country who had alike performed military services before the first of March, 1837, and especially where the distinction is in favor of the emigrant patriot and soldier, and has urged that by the legitimate construction of this section, and consulting its [108] spirit and policy, its benefits should be extended to all officers and soldiers, whether citizens of Texas or emigrants, who had families in the country before the 1st January, 1840, whether these families were constituted by marriage in Texas, subsequent to the declaration of independence, or were introduced from foreign countries. Whatever influence arguments based on such considerations might have in determining the construction of a doubtful phraseology, they can have no weight where the terms are so plain and so certain in their import as to manifest clearly and unequivocally the intention of the legislature and the design and object of the law. On examining the terms employed throughout the section above quoted, the mind is left without doubt or hesitation as to the class of persons embraced within its provisions.

They are such as have their families in Texas at the passage of the law, or, in the terms of the statute, whose families are " now here," plainly implying their previous existence and commorancy elsewhere; or, whose families " may arrive here by the first day of January," etc., conclusively showing that their families were then out of the country, and designating a period for their entry within its limits. The terms are wholly inapplicable to families residing within the republic, or to be subsequently constituted therein by marriage on *arrival* within a country, can only be predicated of persons previously beyond the territorial boundaries. But if any doubt could rest upon the mind as to the true construction of this section, as deducible from the portion already examined, it will be dissipated by recurrence to the subsequent expression of the provision.

These declare that they, viz.: the said officers and soldiers, " shall be entitled to the same quantity of land that they

would have been if their families had emigrated to the country with them."

The inferences from this language are irresistible that these officers and soldiers had emigrated from other countries; [109] that they had families which did not accompany them on their first removal to Texas, and in no legitimate sense or meaning of the term can families who did not emigrate from abroad be brought within the scope or purview of this section of the statute.

It is unnecessary to multiply observations in exposition of the terms of this statutory grant.

The question now before us was decided at the December term, 1845, of the late supreme court, in the case of The Republic v. Gammell, and this and other provisions of law on the subject matter were fully examined and lucidly expounded in the opinion delivered by Judge Wm. E. Jones.

The other provisions referred to in that case are found in the 23d and 30th sections of the land law of 1837. By the former it is provided that all " single men who were in the republic at the date of the declaration of independence, and entitled under the constitution to one-third of a league of land, and who have since married, or may marry within the next twelve months, shall be entitled to the additional quantity of two-thirds of a league and labor of land. Provided, that the benefits of this section shall only extend to those who have contributed to the support and defense of the country," etc.

The 30th section declares that " all officers and soldiers who engaged in the service of Texas previous to the 1st of March, 1837, whose families are now here or may arrive within twelve months from the date of their discharges, shall be entitled to the same quantity of land as they would have been entitled to if their families had emigrated with them to the country."

It will be seen, on comparison, that the terms in which the third section of the act of 1837 is expressed, and on which the appellant relies, are almost identical with those used in the 30th section of the act of 1837, the only substantial difference being as to the period within which the families must be brought into the country. The class of persons to [110] be

benefited is identically the same in both sections. The beneficiaries under the act of 1839 are the same, and can be no other than those referred to and provided for by the 30th section of the law of 1837.

We have shown from the terms used, and which are common to both sections, that persons whose claims are based upon their marriage in Texas are not within the purview of this special provision; and this construction receives additional strength from the fact that such claims had already been provided for by the 23d section of the act of 1837.

Men who were single at the declaration of independence and who had since married, or might subsequently marry within twelve months after the passage of the act, and who had contributed to the support and defense of the country, were declared by that section to be entitled to two-thirds of a league and labor.

This same class cannot also be included within the 30th section without awarding to them a double bounty; and if excluded from the 30th section of the act of 1837 they cannot be embraced under the 30th section of the act of 1839, the latter being almost a literal copy of the former, and is applicable only to persons included under the terms of the former section.

The class provided for by the 23d section is quite distinct from those protected by the 30th section of the act. To the latter a further extension was granted by the law of 1839, to enable them to introduce their families, but to the former the government ceased to offer a large bounty of land as an endowment on their entering into the marriage relation.

We are not required to defend the policy of the government in this particular, but we are not insensible to the fact that for two years and nine months the legislature, from mere favor, and without the impulse of constitutional obligation, had continued to offer to single men an augmentation of two-thirds of a league and a labor of land on their marriage; and if during this lengthened period they neglected to [111] qualify themselves to receive the public bounty, it is their misfortune; and if blame attach anywhere, it cannot be imputed to the laws of the country.

The appellant belongs to the class provided for by the 23d section of the land law of 1837, and having failed to intermarry before the 14th December, 1838, is not entitled to the augmentation offered by that section; nor is he entitled under any other provision of law. There is no error in the judgment of the court below, and it is ordered that the same be affirmed.